WILMA W. BASSETT, trading and doing business under the firm name of Bassett's Dairy, v. ETHEL C. EDWARDS, joined by her husband, O. A. EDWARDS.

30 So. (2nd) 374 January Term, 1947
May 6, 1947 En Banc
Rehearing Denied May 30, 1947

*Parker, Foster & Wiggington, Julius F. Parker, Leo L. Foster, John T. Wigginton* and *T. T. Turnbull,* for appellant.

*Atkinson & Atkinson,* for appellee.

CHAPMAN, J.:

October 11, 1944, Ethel C. Edwards was operating a 1937 Chevrolet automobile in a westerly direction on Park Avenue and brought her car to a stop near the intersection of Park Avenue and Satsuma Drive in Tallahassee, Florida. This intersection is not located within the city limits of Tallahassee. Bassett's Dairy through its servants and employees, at the same time and place, was operating a truck with a load of approximately 9,000 pounds in a southwesterly direction on Satsuma Drive. The automobile and truck collided at the aforesaid intersection, thereby resulting in certain injuries to Ethel C. Edwards and a demolition of her automobile. Ethel C. Edwards, joined by her husband, in a single count declaration alleged that the proximate cause of the injuries received and the destruction of her automobile was due to the carelessness and negligence of the driver in the operation of the Bassett's Dairy truck at and approaching this intersection. The case went to trial on the issues made by defendant's plea of not guilty directed to plaintiffs' declaration and on defendant's counterclaim, drafted under Chapter 20,426, Acts of 1941, Laws of Florida, in which defendant sought to recover of the plaintiffs the sum of $126.16 as damages to defendant's truck received in the collision with plaintiffs' automobile. The plaintiffs filed a plea of not guilty to defendant's counterclaim. Thus on these issues made by the pleadings, the jury, after hearing all the evidence, returned a verdict for the plaintiffs

in the sum of $8,936.31. Defendant presented a motion for a new trial, which was denied, and a judgment was entered and defendant appealed.

Counsel for the appellant pose three questions for adjudication on this appeal and if they are correctly answered, it is contended, the result will be a reversal of the challenged judgment. The first question raises the legal sufficiency of all the evidence adduced to sustain the verdict of the jury because the appellant's liability was not established by a preponderance of all the testimony as required by law. Second, the proper construction to be placed upon all the testimony adduced is that the plaintiff, Ethel C. Edwards, was guilty of negligence when she drove into the intersection and for this reason the verdict of the jury should have been for the defendant in the sum of $126.11 and not for the plaintiff in any amount. The two questions may by us be considered together.

The burden of proof under the law was on the plaintiff below to prove the material allegations of her declaration charging the defendant with negligence. Negligence may be established by direct or circumstantial evidence and may be inferred from either direct or circumstantial testimony when properly adduced or established, and if negligence can reasonably be established by such inferences then the disputes and conflicts in the testimony, if any, become a question for the jury. Jones v. Stoddard, 138 Fla. 458, 189 So. 400.

The trial court read to the jury Section 317.41, Fla. Stats. 1941 (FSA) and additional thereto, upon the request of plaintiff's counsel, instructed the jury, viz:

" . . . that a motorist first entering an intersection, provided he has obeyed the rules of the road and any other applicable law or ordinance in so doing, has the right of way over other vehicles approaching said intersection at right angles thereto, and such other vehicles are required to yield the right of way to any such vehicle first entering the intersection."

"At the request of the defendant, I charge you as follows:

"1. You are instructed as a matter of law that the statutes of the State of Florida provide that the driver of a vehicle shall stop at the entrance to a through highway and

shall yield the right of way to other vehicles which have entered the intersection from said through highway, or which are approaching so closely on said highway as to constitute immediate hazard."

"No. 3. You are instructed as a matter of law that the statutes of the State of Florida provide that the driver of a vehicle shall stop in obedience to a stop sign at any intersection where a stop sign is erected at one or more entrances thereto, although not a part of a through highway, yielding to vehicles not so obligated to stop which are within the intersection or approaching so closely as to constitute an immediate hazard."

"No. 12. It is the duty of one approaching an arterial highway to stop at some point between the stop sign and the highway where he may effectively observe the traffic approaching on the arterial highway."

Ethel C. Edwards testified that she stopped her automobile on the east side of the intersection while traveling in a westerly direction on Park Avenue; that she looked both to her right and left and, not seeing motor vehicle approaching, drove into the intersection and after reaching the west side of the center of Satsuma Drive she saw defendant's truck approaching the intersection traveling at a "terrific speed." The truck struck her car near the door and drove it sideways some fifty feet or more from point of impact. The tire marks of her car appeared on the pavement and the marks appeared west of the center of Satsuma Drive. Plaintiff's car could not be repaired and was sold as junk. Ethel C. Edwards' injuries prevented her from following her vocation as a beauty culture operator from which she made about $50.00 per week. The grip of her right hand was destroyed by the impact and the medical testimony was in conflict as to her ultimate use of the injured hand and fingers.

On the morning of the accident the Bassett truck left Monticello for Carrabelle loaded with milk and ice and consumed about one hour's time from Monticello to the intersection of Park Avenue and Satsuma Drive. The truck driver and a helper testified that the truck approached the intersection at a speed not exceding thirty miles per hour; that when he saw

the automobile for the first time his truck was some 35 feet away; he immediately applied his brakes and did all that was possible to prevent the accident. Emphasis is placed on an obstruction in the form of an oleander bush situated near plaintiff's right which prevented her from seeing the approach of the truck when she stopped her car at the intersection and she was therefore negligent, it is contended, in entering the intersection for this reason. Obstruction of view when motoring on a highway must be observed by all motorists. Every user of the highway is required to exercise reasonable care for his own safety and protection. It was the truck driver's duty and also the driver of the automobile to observe the oleander bush at this intersection and to bring their vehicles under such control as the situation required and demanded. 5 Am. Jur. 459, par. 763; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 3 242-249, par. 1825.

The fact that the truck struck the automobile near its center and at the door when at a point on the highway west of the center of Satsuma Drive indicates that the plaintiff entered the intersection first and it was the defendant's duty to observe the right of the plaintiff and the law of the road, and to bring his truck to a stop and not to enter until plaintiff had cleared the intersection. The truck driver and his helper testified that the truck was traveling thirty miles per hour. The plaintiff testified that she saw it coming and it was traveling at a "terrific speed." The impact drove the automobile sideways a distance of more than fifty feet. The helper testified that the truck driver in an instant prior to the impact turned the truck to the left. Motion for a directed verdict was seasonably made and denied. We have frequently held that if the evidence is in conflict or will admit of different reasonable differences, or if there is evidence tending to prove the issues, then they should be submitted to a jury as a question of fact to be determined by it under appropriate instructions from the trial court. Hastings v. Taylor, 130 Fla. 249, 177 So. 621; Duval Laundry Co., Inc. v. Reif, 130 Fla. 276, 177 So. 726.

It is next contended that the trial court erred in refusing to instruct the jury by giving defendant's requested charges 8 and 11, which are viz:

"No. 8. Gentlemen of the jury, you are instructed that it is the duty of one approaching an arterial or through highway, not only to stop before entering such highway but also to stop in some place where he may observe the traffic approaching on said highway and to govern his entrance thereon accordingly. If, therefore, you find from the evidence that the plaintiff, upon approaching the highway, stopped but did not stop where she could see all vehicles approaching the intersection on the through highway or that if the plaintiff stopped but did not look with due diligence for traffic approaching the intersection, then you should find for the defendant.

"No. 11. It is no answer for the plaintiff automobilist approaching from the left where a stop sign was present that the oleander bush obscured her vision to the right since that circumstance should have increased her vigilance."

Requested charges numbered 8 and 11 *supra* have been carefully considered in light of other charges or instructions to the jury appearing in the record. The rule is that if the requested charges are covered by the general instructions when considered in their entirety and the points raised by the requested charges appear to have been fairly presented to the jury in the general charge, then assignments based on the requested charges must fail. Wharton v. Day, 151 Fla. 772, 10 So. (2d) 417.

Affirmed.

THOMAS, C. J., BUFORD, ADAMS and BARNS, JJ., and MILLARD B. SMITH, Associate Justice, concur.

TERRELL, J., dissents.